John J. Nelson
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 92102
Telephone: (858) 209-6941
jnelson@milberg.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILIAM GLICKMAN, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>FIRST AMERICAN FINANCIAL CORPORATION,<br><br>　　　　　Defendant. | Case No. 8:24-cv-01369-JAK-JPR<br><br>(Assigned to the Hon. John A. Kronstadt)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Date:　March 2, 2026<br>Time:　8:30 AM<br>Courtroom: 10C |

## I.   INTRODUCTION

Defendant First American Financial Corporation ("First American" or "Defendant") moves to compel Plaintiff to arbitration but does so by relying on a document that indicates only that "*The policy to be issued may contain an arbitration clause.*" Moreover, Defendant fails to establish that Plaintiff ever affirmatively assented to, or even understood from the ambiguous language of the purported arbitration clause whether or not it applied to his policy. And even if the Court finds that Plaintiff was on notice of the arbitration provision, the provision itself contains no limitations, either as to time or scope, and is so broad as to encompass every possible dispute, whether or not related to the underlying transaction. Defendant cannot meet its burden here and Plaintiff cannot be compelled to arbitration.

Defendant's Motion to Compel Arbitration should be denied in its entirety.

## II.   BACKGROUND

Defendant First American is a California-based corporation that offers financial services to consumers like Plaintiff and others. Compl. ¶ 2. Defendant provides buyers of real estate with a preliminary report prior to issuing the title insurance policy. Declaration of Kristina Stallings ISO Motion to Compel ("Stallings Decl."), Dkt. 21-2, ¶¶ 6-7. After the real estate transaction is completed, First American provides a copy of the title insurance policy including a policy jacket that discloses the terms of coverage. *Id*. ¶ 19. The real estate purchaser must request the transaction documents, including the title insurance policy referenced in the preliminary report or the arbitration rules referenced in a contemplated title insurance policy. *Id*. ¶ 9.

Here, Plaintiff was provided with the preliminary report which states, in relevant part, only that "*The policy to be issued may contain an arbitration clause.*" *Id*., Exh. 1, p. 9. While the preliminary report contains significant detail regarding the applicable coverage, it makes no other reference to arbitration. *Id*. Defendant

---

thereafter issued the title policy which contains the purported arbitration agreement on page 29. As phrased the provision does not indicate whether the arbitration agreement is effective, it simply states that "[i]f permitted in the state where the Land is located, You or We may demand arbitration." *Id*., Exh. 2, p. 29. Moreover, the provision directs Plaintiff only to the Title Insurance Arbitration Rules of the American Land Title Association but not the Consumer Arbitration Rules of the American Arbitration Association that Defendant contends governs the arbitration provision. *Id*. Notably, Defendant has not produced any affirmative indication by Plaintiff that he read, understood, or agreed to arbitration. *See generally* Stallings Decl.

### III.    ARGUMENT

#### A. Applicable Law

California law governs the enforceability of the Arbitration Provision. While federal law governs the scope of an arbitration agreement, state law "governs issues pertaining to the validity, revocability, and enforceability of an agreement to arbitrate." *SF 2402 LLC v. B.F.B., Inc.*, No. 3:21-cv-00906-BEN-JLB, 2021 WL 5908983, at *4 (S.D. Cal. Dec. 14, 2021). As such, any issues pertaining to the validity, revocability, and enforceability of the arbitration agreement should be governed by California law, and any issues pertaining to scope of the arbitration agreement should be governed by federal law.

#### B. The Court Must Determine the Validity of the Arbitration Agreement

Defendant argues at length that the parties agreed to delegate the issue of arbitrability to an arbitrator. However, Plaintiff was never sufficiently put on notice of the arbitration provision and never agreed to or indicating agreement to the arbitration provision, and thus the arbitration provision is invalid and unenforceable.

---

If the Court agrees that Plaintiff never agreed to the arbitration provision, or that the arbitration provision is invalid, the issue of arbitrability is moot, and the purported delegation clause is therefore not triggered. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ("[V]alidity of franchise agreement's arbitration clause, under California law, was for Court of Appeals, and not arbitrator, to resolve."). Moreover, unlike *Brennan v. Opus Bank*, where the parties to the arbitration agreement were an "experienced attorney and businessman" and "a sophisticated, regional financial institution," here the dispute is between a regular consumer and a sophisticated nationwide financial institution. 796 F.3d 1125, 1130 (9th Cir. 2015). Accordingly, Defendant cannot incorporate terms not provided to Plaintiff and bind Plaintiff by those undisclosed terms. And even if as Defendant notes, "the inquiry focuses on the parties' manifestation of intent, which is best surmised from plain contractual language" the plain contract language here is ambiguous as to whether there even is an arbitration provision in the contract. See Mot. at 6.

### C. Plaintiff's Claims are Not Subject to Arbitration

In deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). The moving party bears the burden of demonstrating that these two elements are satisfied. *Id*. When determining whether a valid contract to arbitrate exists, courts apply ordinary state law principles that govern contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). Agreements to arbitrate may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *See* 9 U.S.C. § 2.

In considering Defendant's Motion, the fundamental question is whether Plaintiff ever actually entered into a binding agreement with Defendant to arbitrate claims

arising out of the Data Breach. The Federal Arbitration Act ("FAA") reflects the fundamental principle that arbitration is a matter of contract. 9 U.S.C. §§ 1–16; *see also AT&T Techs. Inc.,* 475 U.S. 643, 648 (1986) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). Under section 4 of the FAA, the court is instructed to order arbitration to proceed only "once it is satisfied that 'the making of the agreement for arbitration... is not in issue.'" *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967). Thus, the court's first step is to determine whether a valid agreement to arbitrate exists. *See Granite Rock Co.*, 561 U.S. at 296 ("It is well settled ... that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'") (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). As shown below, there was no mutual assent between Plaintiff and Defendant and no agreement was formed.

### 1. Defendant has not shown Plaintiff ever agreed to Arbitrate

Although federal policy generally favors arbitration and suggests that arbitration clauses are liberally construed, general contract principles still apply, and before an arbitration agreement is considered, basic contract requirements must be met. In addition to the "foundational [Federal Arbitration Act] principle" that "[a]rbitration is strictly a matter of consent," *Lamps Plus v. Varela,* 139 S.Ct. 1407, 1415, 203 L.Ed.2d 636 (2019) (internal quotations omitted), California law requires a meeting of the minds to form a contract. *See Binder v. Aetna Life Ins. Co.,* 75 Cal. App. 4th 832, 850 (1999). Mutual assent is a "question of fact." *Bazak Intern. Corp. v. Tarrant Apparel Grp.*, 378 F. Supp 2d 377, 389 (S.D.N.Y. 2005). And Defendant's Motion fails here because Plaintiff did not have actual notice of the arbitration agreement and Defendant's ambiguous reference to the fact that "*The policy to be issued may contain an arbitration clause.*" is insufficient to demonstrate that Plaintiff had actual

notice of the purported arbitration agreement. Critically, Defendant points to no affirmative acknowledgement by Plaintiff that shows, he understood the existence of such an agreement or that he assented to its terms.

"For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.'" *Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (2003), *as modified* (Aug. 27, 2003) (quoting *Shaw v. Regents of University of California*, 58 Cal.App.4th 44, 54 (1997))

In *Wolschlager*, "the Preliminary Report specifically identifi[ed] the document incorporated as the policy, list[ed] the form which is contemplated and [told] the recipient where they [could] find the policy." 111 Cal. App. 4th at 791. Here by contrast, the Preliminary Report simply states that "Copies of the policy forms should be read. They are available from the office which issued this report." *See* Stallings Decl. Exh 1, p. 9. No further reference to any arbitration agreement or specific documents incorporating any arbitration agreement is contained within the Preliminary Report. Rather, the purported arbitration clause is referenced in a separate document, the "Owner's Information Sheet" and is contained on page 29 of that document. Crucially, the arbitration section reads in full:

**11. ARBITRATION**
a. If permitted in the state where the Land is located, You or We may demand arbitration.
b. The law used in the arbitration is the law of the state where the Land is located.
c. The arbitration shall be under the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). You can get a copy of the Rules from Us.

d. Except as provided in the Rules, You cannot join or consolidate Your claim or controversy with claims or controversies of other persons.

e. The arbitration shall be binding on both You and Us. The arbitration shall decide any matter in dispute between You and Us.

f. The arbitration award may be entered as a judgment in the proper court.

When read in conjunction that the policy may contain an arbitration clause, this language does not put Plaintiff on notice that he is agreeing to arbitrate claims, it simply outlines the contours of what arbitration is. Moreover, it does not definitively say whether the parties are actually agreeing to arbitrate given the qualifying language "if permitted." Accordingly, the terms of arbitration are not sufficiently definite to place Plaintiff on notice of any actual agreement.

And while Ms. Stallings' declaration attaches the Title Insurance Arbitration Rules of the American Land Title Association, that document was never provided to Plaintiff and he was simply instructed that it could be acquired from Defendant. See Exh. 2 at page 29. The same is true of the Consumer Arbitration Rules of the American Arbitration Association, which are attached as Exhibit 6 of Ms. Stallings' declaration. No document provided to Plaintiff (Exhibits 1-4 to the Stallings Declaration) makes any reference to the Consumer Arbitration Rules of the American Arbitration Association whatsoever and does not instruct Plaintiff where he can acquire it. This is insufficient and as the court in *Wohschlager* noted, "the incorporation [must] be clear and unequivocal and that the plaintiff can easily locate the incorporated document." 111 Cal. App. 4th at 791. As the Court of Appeal noted in examining a title insurance arbitration dispute following *Wolschlager*, and applying its principles:

> The only arbitration clause that could conceivably be enforced in this case is the one that is a part of the CLTA policy that was actually issued, a policy that was *not* clearly and unequivocally referred to in the contract. This case is thus distinguishable from *Wolschlager,* in which the court concluded that a preliminary report incorporated an arbitration clause in a subsequently issued policy where the report specifically referred to the title insurance policy that was actually issued.

*Kleveland v. Chicago Title Ins. Co.*, 141 Cal. App. 4th 761, 765. Here, as in *Kleveland* and unlike *Wolschlager*, the Preliminary Report is not clear and unequivocal and does not allow Plaintiff to easily locate the document, it simply states that it may contain an arbitration agreement, which is insufficient to place Plaintiff on notice of actual terms or allow him to specifically locate any purported agreement.

Defendant has not met its summary judgment-like burden to show that Plaintiff was presented with the arbitration agreement and manifested his assent. Accordingly, the Court cannot enforce that arbitration provision in this case. *See Wilson v. Playtika, Ltd*., 349 F. Supp. 3d 1028, 1038 (W.D. Wash. 2018); *see also Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682, 2014 WL 903752, at *6-7 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016). While Defendant points to *In re First Am. Fin. Corp.*, to show that its agreement is valid, there the "Plaintiffs expressly acknowledge the existence of binding contracts as a premise of their claims," while here Plaintiff has done no such thing. No. SACV191105DSFEX, 2020 WL 7051087, at *2 (C.D. Cal. Aug. 11, 2020). Rather as explained in the concurrently filed opposition to Defendant's Motion to Dismiss, Plaintiff points to the privacy policy to show Defendant's understanding of its obligations, not that Plaintiff was enforcing that policy as a contract.

Ultimately, Defendant has established only that its Preliminary Report contained a reference that an arbitration agreement may be incorporated, not that it was actually

so and the text of the purported arbitration clause is similarly vague and insufficient. Defendant has not shown that Plaintiff was aware of or viewed these terms or that he affirmatively assented to such terms. Without more, Defendant's Motion to Compel fails. *See Bazemore v. Jefferson Capital Sys.*, LLC, 827 F.3d 1325, 1334 (11th Cir. 2016) (finding irrelevant the fact that Plaintiff "provided almost no evidentiary support for her contention that she never entered into an arbitration agreement" given that "it is defendant's burden ... to prove the existence and terms of the contract it wishes to enforce").

## 2. The Arbitration Agreement does not extend to Claims Arising from the Data Breach

Next, the scope of the purported arbitration agreement is so broad as to be unenforceable. Here, the purported arbitration clause encompasses "any matter in dispute" without limitation as to subject matter or temporal scope.

This Data Breach, which did not arise out of Plaintiff's purchase of real estate can not conceivably fall within the scope of the purported arbitration clause. And if, as Defendant argues, the scope of the arbitration clause extends to any and all disputes Plaintiff may have with First American, the arbitration clause is per se unconscionable.

> The language of the arbitration agreement is incredibly broad. It purports to apply to "any and all disputes" between Jiffy Lube® and Cushnie, and is not limited to disputes arising from or related to the transaction or contract at issue. Heartland has not identified a case involving an arbitration agreement that is so unlimited, and indeed does not attempt to argue that the agreement can truly encompass "any and all disputes" between the parties. As Heartland must admit, a suit by Cushnie against Heartland regarding a tort action arising from a completely separate incident could not be forced into arbitration—such a clause would clearly be unconscionable.

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1262–63 (S.D. Cal. 2012) (citing to *Smith v. Steinkamp,* 318 F.3d 775, 777 (7th Cir.2003) ("if there were no limiting clause in the arbitration agreement at issue in that case, "absurd results [would] ensue," such that if a defendant murdered the plaintiff in order to discourage default on a loan, the wrongful death claim would have to be arbitrated.")

An arbitration clause must relate to the circumstances in which it is formed and may not encompass every conceivable dispute. *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 904 (N.D. Cal. 2020) ("Cricket has not cited to and this order is not aware of any controlling authorities allowing for arbitration of claims, like here, that are wholly divorced from the underlying service contract."); *see also Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) ("no reasonable person would think that checking a box accepting the "terms and conditions" necessary to obtain cell phone service would obligate them to arbitrate literally every possible dispute he or she might have with the service provider"); *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2017 WL 4390182, at *3 (N.D. Cal. Oct. 3, 2017), aff'd, 765 F. App'x 218 (9th Cir. 2019) ("[An arbitration clause with] no limiting principle would render the clause impermissibly overbroad, and therefore inoperable."); *Wuest v. Comcast Corp.*, No. CV C 17-04063 JSW, 2017 WL 6520754, at *3 (N.D. Cal. Oct. 5, 2017) (same).

Here, Defendant is attempting to assert an arbitration clause that it contends governs a 2015 transaction involving Plaintiff to a 2024 Data Breach that took place nine years later and long after the relationship had terminated. *Id*., at * ("The Court is not persuaded that the claim here arises out of or is in any way related to the prior relationship with Comcast and extension of the scope of the earlier customer agreement arbitration provision would similarly yield absurd results."); *Savage v. Citibank N.A.*, No. 14-CV-03633-BLF, 2015 WL 2214229, at *3 (N.D. Cal. May 12,

2015) ("Here, there is no basis for concluding that in accepting the Sears card agreements, Plaintiff consented to arbitrate all claims that could ever arise between him and Citi. Accepting Defendants' interpretation that the "our relationship" language extends to any interaction between Plaintiff and Citi would mean that one credit card agreement could be used to dictate the parties' "relationship" *ad infinitum,* regardless of the subject matter of their future interactions. That is an absurd consequence.")

Here, the only connection between Plaintiff's real estate purchase in 2015 and the 2024 Data Breach is that Defendant acquired the compromised PII when processing his title insurance. *In re Jiffy Lube*, 847 F. Supp. 2d at 1263 ("The existence of the original contract may have been the "but for" cause of the alleged TCPA violation, but this alone is not necessarily enough to establish that the claim arises out of or relates to the contract.")

Accordingly, even if the arbitration agreement were validly formed, it is so overbroad in scope as to be unconscionable and unenforceable. "In short, *Conception* did not disrupt the Supreme Court's longstanding principle that "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" Section 2 of the FAA. *Thomas*, 506 F. Supp. 3d at 906 (quoting *Dr. Associates, Inc. v. Casarotto*, 517 U.S. 681, 682 (1996)).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and to Stay Proceedings should be denied in its entirety.

Dated: January 5, 2026

Respectfully Submitted,

By:    */s/ John J. Nelson*

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA  90212
Tel.: (858) 209-6941
jnelson@milberg.com

*Attorney for Plaintiff and
the Proposed Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff, certifies that this brief does not exceed twenty-five (25) pages, which complies with the page limit set by the Judge's Order dated July 2, 2024.

Dated: January 5, 2026                    Respectfully Submitted,

By:      */s/ John J. Nelson*
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA  90212
Tel.: (858) 209-6941
jnelson@milberg.com

*Attorney for Plaintiff and the Proposed Class*